## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **Jaysin Hoyle**, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>**v.**<br><br>**Harrington Raceway, Inc.**,<br><br>Defendant. | Case No. 1:23-cv-00420-MN |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND NOTICE PLAN

Date: December 1, 2023

**LAW OFFFICE OF**
**DANIEL C. HERR, LLC**

Daniel C. Herr (No. 5497)
1225 North King Street
Suite 1000
Wilmington, DE 19801
(302) 483-7060
Fax: (302) 483-7065
*Dherr@dherrlaw.com*

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner (admitted *pro hac vice*)
Philip J. Krzeski (admitted *pro hac vice*)

**THE LYON FIRM**
Joseph M. Lyon (admitted *pro hac vice*)

i

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................... 1

III.  SUMMARY OF THE SETTLEMENT ................................................................ 2

      A.  Compensation ........................................................................................... 3

      B.  Scope of Release ....................................................................................... 4

      C.  Notice and Administration Plans .............................................................. 4

      D.  Attorneys' Fees ......................................................................................... 6

IV.   THE COURT SHOULD CERTIFY AND PRELIMINARILY APPROVE THE RULE 23

      SETTLEMENT CLASS ....................................................................................... 6

      A.  Certification of the proposed class for settlement purpose is appropriate ........................... 7

          1.  The Proposed Settlement Class meets the requirement of Rule 23(a) ............................ 8

              a.  Numerosity of Rule 23(a)(1) ............................................................ 8

              b.  Commonality under Rule 23(a)(2) .................................................... 9

              c.  Typicality under Rule 23(a)(3) ....................................................... 10

              d.  Adequacy of Representation under Rule 23(a)(4) ........................... 10

          2.  The requirements of Rule 23(b)(3) are met .................................... 11

      B.  The Court should preliminarily approve the class action settlement. ................................ 12

          1.  Adequacy of Representation ........................................................... 13

          2.  Arm's Length Negotiations ............................................................ 14

3.    The Relief Provided for the Class is Adequate ............................................... 14

4.    The Settlement Treats Class Members Equitably Relative to Each Other .................... 17

V.    THE COURT SHOULD ORDER DISSEMINATION OF THE NOTICE ....................... 17

VI.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS SETTLEMENT CLASS COUNSEL ......................................................................................................... 18

VII.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED .................................. 19

VIII.    CONCLUSION ....................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 8, 9, 11, 13

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015) .................................................. 13

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ........................................ 6

*Girsh v. Jepson*, 521 F.3d 153 (3d Cir. 1975) .......................................................... 7, 15

*Gotthelff v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. App'x 94 (3d Cir. 2013) ....................... 11

*Hutson v CAH Acquisition Co. 10, LLC*, No. 1:15CV742, 2016 WL 4289473 (M.D.N.C. Aug. 15, 2016) ..................................................................................................... 9

*In re A. H. Robins, Co., Inc.*,880 F.2d 709 (4th Cir. 1989) .......................................... 8

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) .................................... 15

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2009 U.S. Dist. LEXIS 119870 (W.D. Ky. Dec. 22, 2009) ......................................................................... 12

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ................................................................................................ 6

*In re Marriott Intl., Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022) ..... 17

*In re NFL Players Concussion Injury Litig.* ("*NFL*"), 775 F.3d 570 (3d Cir. 2014) ................. 6, 7

*In re NFL Players Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016) ........................ 6, 9, 10

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ............................................................................. 16

*In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765 (D. Minn. Nov. 17, 2015) .......................................................................... 17

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) .......................... 16

*Kanefsky v. Honeywell Int'l, Inc.*, Case No.  18-0cv-15536, 2022 WL 1320827 (D.N.J. May 3, 2022) ............................................................................................... 7

*Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138 (4th Cir. 2001) ........................................ 13

*Pender v. Bank of Am. Corp.*, 269 F.R.D. 589 (W.D.N.C. 2010) .................................... 8

*Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343 (E.D. Pa. 2021) ...................................... 7

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ...................................................................... 10

*Teva Pharm. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213 (D. Del. 2008) ...................................... 8

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................................ 10

**Statutes**

Fed. R. Civ. P. 23 ............................................ 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 19, 20, 21

**Treatises**

Manual for Complex Litig. (Fourth) §21.632 (2004) ................................................. 14, 15, 19, 21

## I.    INTRODUCTION

Plaintiff Jaysin Hoyle and the putative class she seeks to represent have reached a nationwide class action settlement with Harrington Raceway, Inc. ("Defendant" or "Harrington") for a $400,000 non-reversionary common fund to resolve claims arising from a December 2022 data breach (the "Data Security Incident"). *See* Settlement Agreement ("S.A.") attached as **Exhibit 1**. The settlement provides significant relief to Settlement Class Members and lies well within the range of reasonableness necessary for this Court to grant preliminary approval of class action settlement under Rule 23(e). The Court should, therefore, preliminarily approve the Settlement, direct that notice be sent to all Class Members in the reasonable manner agreed to in the Settlement Agreement, set a date for a Final Approval Hearing, and set deadlines for opt-outs, objections, and any briefing in support of Final Approval, attorneys' fees, expenses, or service award. A proposed timeline is included in the Proposed Order.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a harness racing track and casino located on the fairgrounds of the Delaware State Fair. Defendant provides dining, gambling, and other entertainment options to customers who come from across the country. In December 2022, Defendant discovered that unauthorized individuals accessed a database storing the personal information of Plaintiff and approximately 12,700 other individuals. The information allegedly included Plaintiff and Class Members' names, Social Security numbers, and driver's license numbers, passport numbers, government identification numbers, or military identification numbers (collectively, "Private Information"). On April 17, 2023, Plaintiff initiated this action against Defendant on behalf of himself and all others similarly situated ("Class Members"), alleging that Defendant failed to implement and

maintain reasonable data security measures to protect the Private Information on its database. ECF No. 1.

In August 2023, the parties exchanged significant informal discovery, including, but not limited to, class size, types of information disclosed, submissions made by Defendant to federal and state entities, and insurance coverage. Declaration of Philip J. Krzeski in in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Krzeski Declaration"), ¶ 7. Through the informal discovery process, Plaintiff was able to properly evaluate damages on a class-wide basis. *Id*. The Parties then attended a settlement conference with Magistrate Judge Laura D. Hatcher in which they were able to resolve the case in principle for a non-reversionary common fund of $400,000. *Id*. at ¶ 8.

## III. SUMMARY OF THE SETTLEMENT

Under the proposed Settlement, Defendant will create a non-reversionary common Settlement Fund of $400,000. S.A. ¶ 1.33. This Settlement Fund will be used to pay for settlement class notice and administration costs, Class Counsel's attorneys' fees and case expenses, and cash payments to Class Members who submit a Valid Claim. S.A. ¶¶ 1.34, 7.2, 8.1. The Settlement Agreement defines the Class as:

> all individuals to whom Choice Health sent notice of the Data Incident that occurred in December 2022. The Class specifically excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this settlement (including any members of the Court's staff assigned to this case); (iii) Defendant's officers and directors, and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

S.A. ¶ 1.7. Through discovery, Plaintiff determined that the Class is comprised of approximately 12,700 individuals nationwide. Krzeski Declaration, ¶ 7. All Class Members will receive initial

notice of the settlement via mail to their last known address. *See* Declaration of Jacob Kamenir in Support of Settlement Administrator Simpluris, Inc. ("Kamenir Declaration"), ¶¶ 11-16.

### A. Compensation

The Settlement Fund will first be used to pay the costs of Settlement Administration, attorneys' fees and expenses, and any service award to Plaintiff. S.A. ¶ 8.1. It will then be used to reimburse Class Members' out of pocket expenses or losses related to the Data Security Incident, up to $1,000 per Class Member submitting a Valid Claim. S.A. ¶ 2.2.

To receive compensation for out-of-pocket losses or expenses, Class Members must submit a Claim Form and supporting documentation. Eligible expenses or losses include, but are not limited to:

a. unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's Social Security number;

b. unreimbursed costs incurred on or after December 12, 2022 associated with accessing or freezing/unfreezing credit reports with any credit reporting agency;

c. other unreimbursed miscellaneous expenses incurred related to any Out-of-Pocket Expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

d. other mitigative costs fairly traceable to the Data Incident that were incurred on or after December 12, 2022 through the date of the Settlement Class Member's claim submission; and

e. unpaid time off work to address issues fairly traceable to the Data Incident at the actual hourly rate of that Settlement Class Member.

S.A. ¶ 2.2. Based on previous experience, Class Counsel predicts that there will be sufficient funds remaining in the Settlement Fund after the payment of Out-of-Pocket Losses for additional pro rata distributions of approximately $50 to each Class Member submitting a Valid Claim.

**B.  Scope of Release**

In exchange for consideration above, Plaintiff and Class Members who do not timely and validly excuse themselves from the Settlement will be deemed to have released Defendant from claims arising from or related to the Data Security Incident at issue in this litigation. S.A. ¶¶ 1.25, 1.27, 1.38, 1.39, 6.1. The Settlement's finality is not dependent on the Court awarding attorney's fees and expenses to Class Counsel. S.A. ¶ 7.1, 7.4. The Settlement Agreement states that,

> Upon the Effective Date, each Class Member who did not opt-out of the settlement, including Plaintiff, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims as against all Released Persons.  Further, upon the Effective Date, and to the fullest extent permitted by law, each Class Member, including Plaintiff, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.  Any other claims or defenses Plaintiff and each and all of the Class Members may have against Defendant that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Data Incident, the Litigation, or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

S.A. ¶ 6.1.[1]

**C.  Notice and Administration Plans**

Class Counsel, with Defendant's approval, have selected Simpluris, Inc. ("Simpluris") to be the Settlement Administrator, who will provide the Class with notice and administer the claims. S.A. ¶ 1.33. Defendant, with the assistance of the Settlement Administrator, shall create a "class list" of all names and mailing addresses of potential Settlement Class Members. S.A. ¶ 3.2(a).

---

[1] "'Released Claims' shall collectively mean any and all past, present, and future claims and causes of action related to the Data Incident …." S.A. ¶ 1.26.

Simpluris has quoted Class Counsel $30,000 for its fees and expenses in this case. Krzeski Declaration, ¶ 12. Class Counsel reviewed quotes from two separate settlement administrators before selecting Simpluris as the best settlement administrator for this case. *Id.* Class Counsel's decision to select Simpluris was based on the scope of settlement administration proposed by Simpluris balanced against the cost for such services. *Id.* Class Counsel understand that any settlement administration costs and expenses will be deducted from the Settlement Fund and endeavored to select the settlement administrator for this case offering the best service for the best price. *Id.*

Simpluris will mail a short form notice to each Class Member. Kamenir Declaration, ¶¶ 11-16. The short form notice clearly and concisely informs Class members that they may do nothing and be bound by the Settlement, exclude themselves by completing the exclusion form and not be bound by the Settlement, or make a claim by completing and returning a claim form. S.A., Exhibit A. The short-form notices mailed to Class Members will also direct the Class Members to a settlement website, which shall contain information about the Settlement, including copies of the long-form notice, the Settlement Agreement, and any relevant case filings. S.A., Exhibit D.

At least two weeks before the claim deadline, Simpluris will email a reminder to submit a claim to every Class Member it has a valid email address for. *Id.* ¶ 3.2(g). Simpluris will then be responsible for accounting for all of the claims made and exclusions requested, determining eligibility, and disbursing funds from the Settlement Escrow Account directly to Class Members. S.A., ¶¶ 2.7, 8.3, 9.1, 9.3.

### D.  Attorneys' Fees

Plaintiff will separately seek an award of attorneys' fees and not to exceed 33% of the Settlement Fund (*i.e.*, $133,333.33), and for reimbursement of reasonable costs and litigation expenses incurred, which shall be paid from the Settlement Fund. S.A. ¶ 7.2. Plaintiff will also request a service award of $5,000 in recognition of her service to the class. S.A. ¶ 7.3. The motion for these fees, expenses, and service award, including supporting facts and authorities, will be filed within 60 days of an Order Granting Preliminary Approval. *Id.* ¶ 7.2.

## IV.    THE COURT SHOULD CERTIFY AND PRELIMINARILY APPROVE THE RULE 23 SETTLEMENT CLASS

Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. The Third Circuit has reiterated the long-standing principle that there is a "strong presumption in favor of voluntary settlement agreements." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (finding that District Court's decision vacating preliminary approval ran afoul of the strong presumption in favor of voluntary agreements."). This is particularly true in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995). Judicial review of a class action settlement is a two-step process consisting of preliminary approval and a subsequent fairness hearing to consider final approval. *In re NFL Players Concussion Injury Litig.* ("*NFL*"), 775 F.3d 570, 581-83 (3d Cir. 2014).

At this stage, the preliminary evaluation includes an assessment of whether it is likely that the court will be able to (1) certify the class and (2) finally approve the settlement. *See* Rule 23(e)(1)(B). Prior to the December 1, 2018 amendment to Rule 23, courts in Third Circuit looked

to the factors set forth in *Girsh v. Jepson*, 521 F.3d 153, 157 (3d Cir. 1975), and its progeny, including *NFL*, at the final approval stage. Those factors are:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Courts in this Circuit therefore continue to apply the Third Circuit's factors in addition to Rule 23(e)(2)'s considerations. *See, e.g., Kanefsky v. Honeywell Int'l, Inc.*, Case No. 18-0cv-15536, 2022 WL 1320827, at *4 n. 3 (D.N.J. May 3, 2022); *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343, 355-56 (E.D. Pa. 2021) (Rule 23(e)(2)'s "factors are in many respects a codification of various factors set forth in *Girsh*."). Applying the standards set forth above, the Court must determine at the preliminary approval stage whether it "will likely be able to" approve the proposed Settlement at the final approval stage. Fed. R. Civ. P. 23(e)(2)(B)(i).

As summarized below, and as will be detailed in the motion for final approval, the Settlement Agreement should be preliminarily approved.

### A. Certification of the proposed class for settlement purpose is appropriate.

Prior to preliminarily approving a proposed settlement, the Court must first determine whether the proposed settlement class is appropriate for certification. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For the Court to certify a class, Plaintiff must satisfy all of the requirements of Rule 23(a), and one of the requirements of Rule 23(b). *See Teva Pharm. USA, Inc. v. Abbott Labs.*, 252 F.R.D. 213, 223-24 (D. Del. 2008).

The four requirements of Fed. R. Civ. P. 23(a) are numerosity, commonality, typicality, and adequacy. Rule 23(b)(3) provides that certification is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." *See* Fed. R. Civ. P. 23(b)(3). "[F]ederal courts should give Rule 23 a liberal rather than a restrictive construction" when considering a settlement. *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 595–96 (W.D.N.C. 2010) (quoting *Gunnells v. Healthplan Servs., Inc*., 348 F.3d 417, 424 (4th Cir. 2003)); *see also In re A. H. Robins, Co., Inc*., 880 F.2d 709, 740 (4th Cir. 1989) (holding that it was proper in determining certification to consider whether certification would "foster the settlement of the case with advantage to the Parties and with great savings in judicial time and services."). Further, when considering "a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 620.

As discussed below, these requirements are met for purposes of settlement in this case. The Settlement Agreement proposes to give Settlement Class Members prompt and certain relief. This relief is particularly valuable given the litigation risks presented by this case. Under the circumstances, the settlement is more than fair, reasonable and adequate for Plaintiffs and Settlement Class Members.

       **1. The Proposed Settlement Class meets the requirement of Rule 23(a).**

           **a. Numerosity of Rule 23(a)(1)**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There exists no "mechanical test" for determining

numerosity has been satisfied, but rather the evaluation involves a number of factors, including "the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Hutson v CAH Acquisition Co. 10, LLC*, No. 1:15CV742, 2016 WL 4289473, at *2 (M.D.N.C. Aug. 15, 2016) (quoting *Adams v. Henderson*, 197 F.R.D. 162, 170 (D. Md. 2000)).

Defendant has confirmed the proposed Settlement Class consists of approximately 12,700 members spread throughout the United States. Defendant has the name and mailing address for a majority of the Settlement Class Members in its business records. Courts in the Third Circuit have held that as few as 40 class members were sufficient to satisfy the numerosity requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Numerosity is therefore easily satisfied.

### b.  Commonality under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the class" and that the class members have suffered the same injury from the alleged conduct of the defendant.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011); Fed. R. Civ. P. 23(a)(2). The commonality requirement is satisfied if the claims have even one significant issue common to the class. *See In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 427 (3d Cir. 2016). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of class wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 352. Both the majority and dissenting opinions in that case agreed that "for purposes of Rule 23(a)(2) even a single common question will do." *Id.*

In this case, there are a myriad of common questions of law and fact, such as whether Defendant owed a duty to protect the secure the PII of its customers, whether Defendant breached that duty, whether Defendant maintained reasonable security procedures and practices appropriate to the nature of the storing Plaintiffs' and Class Members' PII, and whether Plaintiffs have actionable claims. These common questions of law and fact arise from the same incident—the Data Security Incident.

### c. Typicality under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative Plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). Here, all of Plaintiff's claims arise out of the same alleged conduct by Defendant related to the Data Security Incident. Like commonality, typicality is satisfied here.

### d. Adequacy of Representation under Rule 23(a)(4)

The final requirement of Rule 23(a) is that "the representative part[y] will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining the adequacy of representation, the court should "'evaluate [both] the named plaintiffs' and . . . counsel's ability to fairly and adequately represent class interests.'" *Gotthelff v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. App'x 94, 100-01 (3d Cir. 2013) (citations omitted).

To adequately represent the class, the class representatives must be a part of the class, possess the same interest as the class, and suffer the same injury as the class members. *Amchem*, 521 U.S. at 625-26. Here, Plaintiff received a notification from Defendant indicating that his Private Information was compromised in the Data Security Incident. Plaintiff's interests are not antagonistic with the Settlement Class and no fundamental conflict exists. Plaintiff has also actively participated in the litigation of this case, and has been in regular communication with his

attorneys regarding these proceedings. Plaintiff has had, and continues to have, every incentive to litigate this case to the fullest extent and maximize the amount recovered for the entire Settlement Class.

With respect to the adequacy of Class Counsel, they have invested considerable time and resources into the investigation of the facts underlying the claims and the prosecution of this action. Class Counsel have a wealth of experience in litigating complex class action lawsuits, and were able to negotiate a settlement for the Settlement Class that is fair, reasonable, and adequate. The respective firm resumes for proposed Class Counsel are attached as Exhibits A and B to the Gould Declaration.

### 2. The Requirements of Rule 23(b)(3) are met.

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which has two components: predominance and superiority. *See* Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2009 U.S. Dist. LEXIS 119870, at *25(W.D. Ky. Dec. 22, 2009) (internal quotations omitted) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1084 (6th Cir. 1996)). Plaintiffs allege that Rule 23(b)(3) is satisfied because, as shown by the multiple common questions of law and fact described above, "[common] questions of law or fact ... predominate over any questions affecting only individual members" *Lienhart v. Dryvit Sys., Inc*., 255 F.3d 138, 147 (4th Cir. 2001). The "main concern in the predominance inquiry" is "the balance between individual and common issues." *Brown v. Nucor Corp*., 785 F.3d 895, 922 (4th Cir. 2015) (quoting *Myers v. Hertz Corp*., 624 F.3d 537, 549 (2d Cir. 2010)). When assessing

predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial.").

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied for settlement purposes. *See* Fed. R. Civ. P. 23(b)(3). The Settlement Agreement provides members of the Settlement Class with the ability to obtain prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Settlement Class Members who are dissatisfied with the settlement to object to the Settlement or to exclude themselves. The Settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendants. In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied for settlement purposes, certification of the proposed Settlement Class is appropriate.

**B. The Court should preliminarily approve the class action settlement.**

The Proposed Settlement is fair, reasonable, adequate and should be preliminarily approved. Federal Rule of Civil Procedure 23(e) requires that any compromise of claims brought on a class basis be subject to judicial review and approval. Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The procedure for review of a proposed class action settlement is a well-established two-step process. For the first stage, the Court preliminarily approves the settlement pending a fairness hearing, certifies the class for settlement purposes and authorizes notice to be

given to the settlement class. Manual for Complex Litig. (Fourth) §21.632 at 320 (2004). Once the

class has received notice and has an opportunity to object to or opt-out of the settlement, the court

then holds a final settlement hearing. *Id*. § 21.633 at 321-22.

The general standard by which courts are guided when deciding whether to grant

preliminary approval of a class action settlement is whether the proposed settlement falls within

the range of what could be found "fair, reasonable and adequate." *Id*.; *see also* Fed. R. Civ. P.

23(e)(2). Approval is proper under the amended Rule 23(e)(1)(B)(i) upon a finding that the

settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the
> class;

> (B) the proposal was negotiated at arm's length;

> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class,
> including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of
> payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and

> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e). Evaluating these factors and the *Girsh* factors (*supra* § IV), the Proposed

Settlement satisfies the standard for preliminary approval.

### 1. Adequacy of Representation

Class Counsel is comprised of attorneys from firms that are nationally recognized within

the field of complex class action litigation. *See* Krzeski Declaration, Exs. A & B (firm resumes).

Moreover, Plaintiff's Counsel have significant experience in data privacy class and complex

litigation and are collectively participating as plaintiffs' counsel in numerous data breach class

actions in state and federal courts around the country. *Id.* Thus, Plaintiff's Counsel is unquestionably qualified to undertake this litigation.

### 2. Arm's Length Negotiations

The proposed Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this Action, under the supervision of an experienced neutral Magistrate Judge Laura D. Hatcher. *See* Krzeski Declaration, ¶¶ 6-8. In addition to mediation, the Parties spent significant time negotiating the terms of remedial measures, notices, and final written Settlement Agreement which is now presented to the Court for approval. *See id.* ¶ 8. At all times, these negotiations were at arm's length and, while courteous and professional, the negotiations were intense and hard-fought on all sides. *See id.* ¶¶ 7-9. These circumstances weigh in favor of approval. *See* Manual for Complex Litig. § 30.42 ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

### 3. The Relief Provided for the Class is Adequate

The relief offered by the Settlement (both monetary and equitable) is adequate considering the risks of continued litigation. Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiff's claims would still need to survive dispositive motions and succeed at class certification.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement, "[T]here is an overriding public interest in settling class action litigation, and it should therefore be

14

encouraged," especially in complex cases that have the potential to last for years. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

This is not only a complex case, but it is in an especially risky field of litigation: data breach. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Although data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal principles apply to the claims. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled … many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). Through the Settlement, Plaintiffs and Class Members gain significant and immediate benefits without having to face further risk.

While Plaintiff believes he would prevail on his claims, there is little directly analogous precedent to rely upon. Beyond the merits, class certification is challenging in any case. Class certification has been denied in other consumer data breach cases and to date, very few data breach actions have achieved class certification over the objection of the defendant. *See In re Marriott Intl., Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 172 (D. Md. 2022) ("I acknowledge

that this Court is one of the first to certify Rule 23(b)(3) classes involving individual consumers complaining of a data breach.").[2]

The Settlement will provide Class Members with significant and timely benefits which compare favorably to what Class Members could recover were they to secure a favorable judgment at trial. In the experience of Class Counsel, the monetary relief provided by this Settlement is a good result, and is fair and reasonable in light of reported average out-of-pocket expenses due to a data breach.[3] Using one metric (*i.e.*, average value per class member), the monetary benefits provided by the Settlement (i.e., $31.49) are in line with, or superior to, those of other settlements in data breach class actions that have been preliminarily or finally approved by other courts. *See* Krzeski Declaration, ¶ 9, citing *Cochran v. Kroger Co.*, No. 5:21-cv-01887 (N.D. Cal.) (average value of $1.31 per class member); *Thomsen v. Morley Cos., Inc.*, No. 1:22-cv-10271, (E.D. Mich.) (average value of $6.19 per class member); *Reynolds v. Marymount Manhattan Coll.*, No. 1:22-cv-06846 (S.D.N.Y.) (average value of $6.78 per class member); *Julien v. Cash Express, LLC*, No. 2022-cv-221 (Putnam Cty., Tenn.) (average value of $8.02 per class member).[4]

---

[2] Notably, the groundbreaking class certification ruling in the *Marriott* case was just vacated by the Fourth Circuit. *See In re Marriott Intl., Inc.*, No. 22-1744, 2023 WL 5313006 (4th Cir. Aug. 18, 2023).

[3] For individuals who experienced actual identity theft, a 2014 Congressional Report stated that these victims incurred an average of $365.00 in expenses in dealing with the fraud. See Kristin Finklea, Congressional Research Service, Identity Theft: Trends and Issues (January 16, 2014), p. 2, available at: https://fas.org/sgp/crs/misc/R40599.pdf (last visited April 29, 2021).

[4] The court in *Morley* overruled an objection that argued the settlement value was too low. *See Thomsen v. Morley Companies, Inc.*, No. 1:22-CV-10271, 2023 WL 3437802, at *2 (E.D. Mich. May 12, 2023) (overruling objection that argued the settlement was inadequate because, after deducting attorneys' fees, the settlement had an average value per class member of only $4.15).

Accordingly, the Settlement benefits present a substantial recovery, especially considering the litigation risks described above.

### 4.  The Settlement treats class members equitably relative to each other.

Finally, Rule 23(e) requires that the Settlement "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement treats all Class Members equitably relative to one another because all who have been damaged are eligible to receive reimbursement based on expenses incurred, not on any unequitable basis. S.A. ¶ 2. Moreover, all money remaining in the Settlement Fund after the payment of fees, expenses, Class Representative Service Award, and claims for Out-of-Pocket Losses will be split evenly amongst each Class Member submitting a claim. Because there is no disparate treatment amongst the members of the proposed Settlement Class, the Settlement merits preliminary approval.

## V.  THE COURT SHOULD ORDER DISSEMINATION OF THE NOTICE

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Litig. § 21.312 (internal quotation marks omitted).[5]  The proposed Settlement provides for direct mail notice to all Settlement Class Members using contact information from Defendants' business records. This same information was used by Defendants to provide notice of the Security Incident to affected customers. Additionally, a Settlement website will be established through

---

[5] The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950).

which Settlement Class Members can access relevant case documents, including the Complaint and notices, and file a Claim Form. As shown on Exhibit D to the Settlement Agreement, the direct mail notice that will be delivered to each Settlement Class Member will identify the website address, advise that more information regarding the Settlement may be found on the website, and give the mailing address and toll-free number of the Settlement Administrator.

The proposed Notice is designed to provide "direct notice in a reasonable manner to all class members who would be bound by the proposal…." Fed. R. Civ. P. 23(e)(1)(B). The Notice Plan is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the case, the proposed Settlement and its terms, any request for attorneys' fees and expenses and Service Awards, and the Class Members' rights to opt-out of or object to the Settlement, as well as the other information required by Fed. R. Civ. P. 23(c)(2)(B). Kamenir Declaration ¶ 20.

## VI.    PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS SETTLEMENT CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in the Krzeski Declaration, Proposed Class Counsel have extensive experience prosecuting similar class actions and other complex litigation. *See* Krzeski Declaration, Exs. A & B. Proposed Class Counsel thoroughly investigated and analyzed the facts and circumstances relevant to the claims brought by Plaintiffs in this case. The

proposed Class Counsel have diligently and efficiently prosecuted the claims in this matter, dedicated substantial resources toward the endeavor, and have successfully and fairly negotiated the Settlement of this matter to the benefit of Plaintiffs and the Settlement Class. *See* Krzeski Declaration, ¶¶ 5-18. Therefore, Plaintiff respectfully requests that the Court appoint Philip J. Krzeski and Bryan L. Bleichner of Chestnut Cambronne PA and Joseph M. Lyon of The Lyon Firm as Settlement Class Counsel.

## VII.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED

The Court should schedule a final approval hearing to decide whether to grant final approval of the Settlement, address Class Counsel's request for attorneys' fees, expenses, and a service award for the Class Representatives, consider any objections and exclusions, and determine whether to dismiss this action with prejudice. *See* Manual for Complex Litig. § 30.44. Plaintiffs respectfully request that the final approval hearing be scheduled at least 135 days after the order granting preliminary approval. Toward these ends, the Parties have provided the Court with a proposed scheduled in the Proposed Order (Ex. C to S.A.).

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order: (1) provisionally certifying this case as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(3), and 23(e) for the purpose of effectuating a class action settlement of the claims against Defendant; (2) preliminarily approving the settlement as fair, adequate, and reasonable; (3) directing notice to Settlement Class Members consistent with the Notice Program and approving the form and content of the Notices; (4) approving the procedures set forth in the Settlement Agreement for Settlement Class Members to exclude themselves from the Settlement Class; (5) staying the Action pending Final Approval of the Settlement; (6) appoint Plaintiff as Class Representative and Plaintiffs'

attorneys as Class Counsel; (7) appointing Simpluris as the Settlement Administrator; and (8) scheduling a final approval hearing.

<div style="margin-left:40%">

Respectfully,

**LAW OFFFICE OF**
**DANIEL C. HERR, LLC**

</div>

Date: December 1, 2023

<div style="margin-left:40%">

_/s/ Daniel C. Herr_
Daniel C. Herr (No. 5497)
1225 North King Street
Suite 1000
Wilmington, DE 19801
(302) 483-7060
Fax: (302) 483-7065
_Dherr@dherrlaw.com_

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner (admitted _pro hac vice_)
Philip J. Krzeski (admitted _pro hac vice_)
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
_pkrzeski@chestnutcambronne.com_
_bbleichner@chestnutcambronne.com_

**THE LYON FIRM**
Joseph M. Lyon (admitted _pro hac vice_)
2754 Erie Ave.
Cincinnati, OH 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
Email: _jlyon@thelyonfirm.com_

_Counsel for Plaintiff and Putative Class_

</div>