# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **Jaysin Hoyle**, *on behalf of himself and all others similarly situated*,<br><br>       Plaintiff,<br><br>**v.**<br><br>**Harrington Raceway, Inc.**,<br><br>       Defendant. | Case No. 1:23-cv-00420-MN<br><br>Judge Maryellen Noreika |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

Table of Authorities ........................................................................................................iii

I.    Introduction ..........................................................................................................1

II.   Overview of Plaintiff's Claims, the Litigation, and Procedural History......................2

III.  Summary of the Settlement ....................................................................................3

IV.   The Proposed Settlement Warrants Final Approval ......................................................4

      A.   The Settlement Class Should Be Finally Certified ...................................................4

      B.   The Court Should Grant Final Approval ...............................................................5

           1.   The Settlement Satisfies the Factors of Rule 23(e) .......................................5

           2.   The Settlement Satisfies the *Girsh* Factors ....................................................10

V.    The Notice Program Met Due Process Requirements....................................................16

VI.   Conclusion...............................................................................................................18

## **TABLE OF AUTHORITIES**

**Cases**

*Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL84928, at 9 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) ........................................................................................ 9

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594- 95 (3d Cir. 2010) ................................... 1

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). ................................................... 16

*Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004 ........................ 17

*Girsh v. Jespen*, 521 F.3d 153, 157 (3d Cir. 1975) ............................................... 5, 10, 13

*GMC*, 55 F.3d at 814 .......................................................................................................... 13

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) ............................... 16

*Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1991) .......................................................... 13

*In re Aetna Inc.*, CIV. A. MDL 1219, 2001 WL 20928, at *6 (E.D. Pa. Jan. 4, 2001) ............... 15

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) ...................... 17

*In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (" ........................................ 12

*In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) .............. 9

*In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995 ............................. 11

*In re Nat'l Football League*, 821 F.3d at 437 .................................................................... 10

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 701 (M.D. Pa. 2008) 11

*In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 278, 297 (E.D. Pa. 2012) ................ 6

*In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017) .......................................................................... 17

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ...................... 1, 7, 10

*Kanefsky v. Honeywell Int'l, Inc.*, Case No. 18-0cv-15536, 2022 WL 1320827, at *4 n. 3 (D.N.J. May 3, 2022) ....................................................................................... 5

*Lazy Oil v. Witco Corp.*, 95 F. Supp. 2d 290, 318 (W.D. Pa. 1997) ................................... 14

*Lenahan v. Sears, Roebuck & Co.*, CIV. 02-0045, 2006 WL 2085282, at *12 (D.N.J. July 24, 2025) *aff'd*, 266 Fed. Appx. 114 (3d Cir. 2008) ...................................................... 10

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) ...................................... 16

*Prudential II*, 148 F.3d. at 318 ........................................................................................ 11

*Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022 ................................................................................................... 16, 17

*Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *6 (M.D. Ala. Mar. 17, 2017) .............. 8

*Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343, 355-56 (E.D. Pa. 2021) ................... 5

*Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 251 (D.N.J. 2005) ......................... 11

*Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982) ................................................... 17

**Rules**

FED. R. CIV. P. 23(E)(2)(D) ........................................................................................... 9

FED. R. CIV. P. 23(e)..................................................................................................... 6

**Other Authorities**

Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and
Plain Language Guide, at 3 (2010) ........................................................................ 17

*Manual for Complex Litigation,* Fourth, § 21.61 (2004) ............................................. 5

## I.    INTRODUCTION

This case arises out of a Data Security Incident impacting Defendant Harrington Raceway, Inc. ("Defendant') and potentially resulting in the release of approximately 12,700 Class Members' sensitive and confidential information, including, but not limited to, names, Social Security numbers, and driver's license numbers, passport numbers, government identification numbers, or military identification numbers ("Private Information"). On September 13, 2023, Plaintiff Jaysin Hoyle ("Plaintiff") and Defendant, with the assistance of Magistrate Judge Laura D. Hatcher, reached a settlement (the "Settlement"), which seeks to resolve all claims in the above-captioned matter (the "Lawsuit"). On December 5, 2024, the Court granted Preliminary Approval of the Settlement. *See* ECF No. 30. Plaintiff now respectfully requests the Court enter an order, in substantially similar form to Exhibit C of the Settlement and certifying the Settlement Class (defined below) for settlement purposes only.

Final approval of the Settlement is warranted. Judicial policy favors pretrial settlements, especially in a complex, class action. *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) ("This presumption is especially strong in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") (citation and quotation marks omitted); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation and it should therefore be encouraged.").

The valuable benefits made available pursuant to the Settlement squarely address the issues and claims raised in the Lawsuit and provide significant relief to the Settlement Class Members The Settlement provides tiered monetary relief to compensate Settlement Class Members for inconveniences and losses as a result of the alleged data disclosure which is the basis of this

Lawsuit ("the Data Security Incident"), as well as injunctive relief designed to prevent reoccurrence of the release of sensitive personal information to unauthorized individuals. The Settlement compares favorably with settlements in similar litigations and the Parties reached it only after intensive arm's length negotiations before a skilled mediator. Accordingly, Plaintiff respectfully requests that this Court finally approve the terms and conditions of this Settlement and certify the Settlement Class.

## II.    OVERVIEW OF PLAINTIFF'S CLAIMS, THE LITIGATION, AND PROCEDURAL HISTORY

Defendant is a harness racing track and casino located on the fairgrounds of the Delaware State Fair. *See* First Amended Class Action Complaint (ECF No. 8), ¶¶ 1-2. Defendant provides dining, gambling, and other entertainment options to customers who come from across the country. *Id*. In December 2022, Defendant discovered that unauthorized individuals accessed a database storing the personal information of Plaintiff and approximately 12,700 other individuals. *Id*. ¶¶ 2, 6, 126. The Private Information allegedly included Plaintiff and Class Members' names, Social Security numbers, and driver's license numbers, passport numbers, government identification numbers, or military identification numbers. *Id*. ¶ 2. On April 17, 2023, Plaintiff initiated this action against Defendant on behalf of himself and all others similarly situated ("Class Members"), alleging that Defendant failed to implement and maintain reasonable data security measures to protect the Private Information on its database. ECF No. 1.

In August 2023, the parties exchanged significant informal discovery, including, but not limited to, class size, types of information disclosed, submissions made by Defendant to federal and state entities, and insurance coverage. *See* Declaration Philip J. Krzeski in support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Krzeski Decl."), ¶ 10.  Through the informal discovery process, Plaintiff was able to properly evaluate damages on a class-wide basis.

*Id.* The Parties then attended a settlement conference with Magistrate Judge Laura D. Hatcher in which they were able to resolve the case in principle for a non-reversionary common fund of $400,000. *Id.* ¶ 8.

## III. SUMMARY OF THE SETTLEMENT

The Settlement benefits are more fully described in Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Notice Plan (ECF No. 29), PageID 228-32 ("Unopposed Motion for Preliminary Approval"). Plaintiff summarizes the key terms below.

Under the Settlement, Defendant will create a non-reversionary common Settlement Fund of $400,000. S.A. ¶ 1.33. This Settlement Fund will be used to pay for settlement class notice and administration costs, Class Counsel's attorneys' fees and case expenses, and cash payments to Class Members who submit a Valid Claim. S.A. ¶¶ 1.34, 7.2, 8.1. The Settlement Agreement defines the Class as:

> all individuals impacted by Harrington Raceway's Data Incident that occurred in December 2022. The Class specifically excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this settlement (including any members of the Court's staff assigned to this case); (iii) Defendant's officers and directors, and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads nolo contendere to any such charge.

S.A. ¶ 1.7. Moreover, through the Notice Plan approved in the Order Granting Preliminary Approval of Class Action Settlement (ECF No. 30), Settlement Administrator provided notice to Class Members through the best means possible. *See* Declaration of Jacob Kamenir in Support of Settlement Administrator Simpluris, Inc. ("Settlement Administrator Decl."), ¶¶ 2-10.

Regarding compensation to Class Members, the Settlement Fund provides two forms of monetary relief. First, it will reimburse Class Members for out-of-pocket expenses or losses related

to the Data Security Incident up to $1,000 per Class Member submitting a valid claim. S.A. ¶ 2.2.

These out-of-pocket expenses include the following:

    a.   unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's Social Security number;

    b.   unreimbursed costs incurred on or after December 12, 2022 associated with accessing or freezing/unfreezing credit reports with any credit reporting agency;

    c.   other unreimbursed miscellaneous expenses incurred related to any Out-of-Pocket Expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges;

    d.   other mitigative costs fairly traceable to the Data Incident that were incurred on or after December 12, 2022 through the date of the Settlement Class Member's claim submission; and

    e.   unpaid time off work to address issues fairly traceable to the Data Incident at the actual hourly rate of that Settlement Class Member.

S.A. ¶ 2.2. Second, the Settlement Fund provides for a pro-rata distribution of $50 to each Class Member who submits a Valid Claim form. S.A. ¶

Moreover, as described in Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Class Representative Service Awards (ECF No. 32), Plaintiff's Counsel requests (1) an award of attorneys' fees in the amount of one-third of the Settlement Fund; (2) reimbursement of reasonable costs and litigation expenses incurred; and (3) a service award of $5,000 in recognition of Plaintiff's service to the class.

## IV.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

### A.    The Settlement Class Should Be Finally Certified.

Plaintiff incorporates § IV(A) in the Unopposed Motion for Preliminary Approval herein, which sets forth sets forth the basis to certify the Rule 23 Class for settlement purposes only. *See id.*, PageID 232-38. Specifically, § IV(A) establishes the Settlement Class satisfies the factors in

Rule 23(a) and Rule 23(b)(3). Plaintiff represents there has been no material change in the position set forth therein and respectfully reiterates his request that the Court certify the Settlement Class under Rule 23.

### B.     The Court Should Grant Final Approval.

Courts within the Third Circuit apply the factors set forth in Rule 23(e) and in *Girsh v. Jespen*, 521 F.3d 153, 157 (3d Cir. 1975). *See, e.g.*, *Kanefsky v. Honeywell Int'l, Inc*., Case No. 18-0cv-15536, 2022 WL 1320827, at *4 n. 3 (D.N.J. May 3, 2022); *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343, 355-56 (E.D. Pa. 2021) (Rule 23(e)(2)'s "factors are in many respects a codification of various factors set forth in *Girsh*.").

### 1.    The Settlement Satisfies the Factors of Rule 23(e).

Federal Rule of Civil Procedure 23(e) provides that a class action cannot be settled or compromised without approval by the court. FED. R. CIV. P. 23(e). Judicial approval is required regardless of whether the action is certified for trial and later settled or is certified for purposes of settlement. *Manual for Complex Litigation,* Fourth, § 21.61 (2004). Recent revisions to Rule 23(e)—effective on December 1, 2018—standardize the factors governing final approval, stating that approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

    (A) The class representatives and class counsel have adequately represented the class;

    (B) The proposal was negotiated at arm's length;

    (C) The relief provided for the class is adequate, taking into account:

        i.    The costs, risks, and delay of trial and appeal;
        ii.    The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        iii.    the terms of any proposed award of attorney's fees, including timing of payment; and
        iv.    Any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e).

*Adequacy of Representation and Arm's Length Negotiation.* As explained above, Plaintiff and Class Counsel have adequately represented the Class throughout this case. *See* Krzeski Decl. ¶ 9. Class Counsel are well-versed in class litigation, including class privacy and data breach litigation such as this, and have steadfastly represented the Class throughout this matter, and the Class Representatives are equally committed and unconflicted. *Id.*

Further, the Settlement was at all times negotiated at arm's-length. Class Counsel undertook significant factual and legal investigation of the issues prior to filing the case and during the litigation. The parties engaged in informal discovery about both the facts and law at issue. Finally, Magistrate Judge Laura D. Hatcher presided over the parties' formal, arm's length, and adversarial mediation. The Settlement clearly emerges from a formal arms-length negotiation process between the parties. *See id.* ¶¶ 10-11.

Although the parties have not reached the discovery stage of the litigation, the Settlement is the product of significant investigation of Plaintiff's and Class Members' claims.[1] As part of their investigation, Class Counsel conducted extensive and lengthy interviews of the Plaintiff,

---

[1] Courts have approved class action settlements where the litigation is in its early stages and minimal discovery has occurred. *In re Processed Egg Products Antitrust Litig.*, 284 F.R.D. 278, 297 (E.D. Pa. 2012) ("*Eggs II*") (granting final approval while noting that "although no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement, Plaintiffs' Interim Co–Lead Counsel conducted informal discovery, including, *inter alia,* independently investigating the merits prior to filing the complaint, which enabled counsel to have sufficient background in the facts of the case, including [the relevant Defendant's] alleged role in it.").

reviewed all documents regarding the data disclosure, and analyzed the applicable law regarding data disclosures by employers of their employees' PII. *See id.* ¶ 13.

In addition, at the Settlement Conference, Class Counsel provided information regarding specific damages incurred by Class Members and Defendant's Counsel provided additional details and facts surrounding the Data Security Incident. *Id.* ¶¶ 11, 13. Based on the information obtained at the Settlement Conference along with Class Counsel's independent investigation of the relevant facts and applicable law, and their experience in privacy class actions, Class Counsel determined the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. *Id.* ¶¶ 11, 17, 19.

Class Counsel's work crystallized the relevant facts in the case, enabled Class Counsel to effectively value the parties' respective positions in the Lawsuit, and verified the fairness, adequacy, and reasonableness of the Settlement. The significant legal challenges for each side, should the litigation continue, support final approval of the proposed settlement. Further, the Settlement avoids the time, expense, and delay inherent in continued litigation. Accordingly, these factors also favor final approval.

***Adequacy of Relief.*** The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiffs are confident in the merits of their claims, the risks involved in prosecuting a class action through trial cannot be disregarded. Plaintiff's claims would still need to survive a motion to dismiss, succeed on a motion for class certification, and likely survive a motion for summary judgment.

Almost all class actions involve a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors resolving class actions through settlement: "[T]here is an overriding public interest in settling class action litigation, and it should therefore be

encouraged." *In re Warfarin*, 391 F.3d at 535; *see also Rosenau v. Unifund Corp*., 646 F. Supp. 2d 743, 751 (E.D. Pa. 2009) (Rufe, J.) ("Generally, settlements are favored in the class action context.").

This is not only a complex case, but also is in an especially risky field of litigation. *See, e.g.*, *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results"). Data breach cases continue to be among the most risky and uncertain of all class action litigation and certification is rare. Through the Settlement, Plaintiff and Class members gain significant benefits without having to face further risk.

While Plaintiff believes he would prevail on a motion to dismiss and on class certification, there is little directly analogous precedent to rely upon. Class certification has been denied in other consumer data breach cases and it was only recently that the first litigation class was certified in a consumer data breach case. *See Smith v. Triad of Alabama, LLC*, 2017 WL 1044692, at *6 (M.D. Ala. Mar. 17, 2017). The lack of direct precedent creates an additional risk in achieving and maintaining class action status throughout trial and even appeal. While Plaintiffs feel they would be able to obtain certification outside of a settlement context and maintain certification through trial, this is not certainty. Additionally, any potential certification would be subject to later appeal and potential reversal. Also, the cost of trial and any appeals would be significant and would delay the resolution of this litigation without the guarantee of any relief.

Furthermore, the substantial and immediate benefits achieved by the Settlement avoids the risks, uncertainties, and delays of continued litigation. As now clear from the Class's response, there was no opposition to the settlement and a resoundingly positive claims rate (*see infra* § B.2,

8

p. 12), which is unsurprising considering the variety of benefits provided and the tiered level of compensation tailored to the damages suffered by Class Members.

In contrast, if the Lawsuit were to continue, Plaintiff and the Settlement Class would face a number of difficult challenges, including surviving a motion to dismiss, obtaining class certification and maintaining certification through trial and likely motions for summary judgment. Thus, absent a settlement, Plaintiff faces serious obstacles in this Lawsuit. This is another indication that the proposed Settlement is fair, reasonable, and adequate and should be approved. *See Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL84928, at 9 (M.D. Pa. Jan. 7, 2013), *appeal dismissed* (3d Cir. Feb. 20, 2013) (finding preliminary approval of settlement appropriate where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place substantial drain on judicial resources"); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact…. That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."). Consequently, the Court should grant final approval of the Settlement.

*Settlement Treats Each Respective Class Member Equitably.* The last requirement of the new Rule 23(e) is that the Settlement "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). Here, the Settlement treats all Class Members equitably relative to one another because all who have been damaged are eligible to receive reimbursement for their losses—either via out-of-pocket expenses or a pro rata payment.

### 2. The Settlement Satisfies the *Girsh* Factors.

The Third Circuit has also identified the following factors ("the *Girsh* factors") that a court should consider in determining whether a proposed class action settlement is fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d 153, 157 (3d Cir. 1975); *see also Moore v. GMAC Mortg.*, No. -7-4296, 2014 WL 7690156, at *4 (E.D. Pa. Sept. 18, 2014).

***The Complexity, Expense, and Likely Duration of Litigation Supports the Settlement.***
The first *Girsh* factor addresses "the probable costs, in both time and money, of continued litigation." *In re Nat'l Football League*, 821 F.3d at 437. A settlement is favored when "continuing litigation through trial would have required additional discovery, extensive pretrial motions addressing complex factual and legal questions, and ultimately a complicated, lengthy trial." *In re Warfarin*, 391 F.3d at 536. The Court must balance the proposed settlement against the time and expense of achieving a potentially more favorable result through further litigation. Where the complexity, expense, and likely duration of the litigation are significant, the Court will view this factor as weighing in favor of settlement. *Lenahan v. Sears, Roebuck & Co.*, CIV. 02-0045, 2006 WL 2085282, at *12 (D.N.J. July 24, 2025) *aff'd*, 266 Fed. Appx. 114 (3d Cir. 2008) (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 536 (D.N.J. 1997) ("*Prudential I*")).

Here, continued litigation would be long, complex, expensive, and a burden to the Court and the litigants. Continuing this litigation against Defendant would entail a lengthy and expensive battle that may result in no relief to the Settlement Classes or delay relief for years. Indeed, the proposed Settlement stands in stark contrast to the outcomes in numerous other class actions, where courts denied certification because of the inability to allege viable damages theories. It is reasonable to expect that the issues at hand would continue to be sharply disputed and contested, and that a jury trial (assuming the case proceeded beyond pretrial motions) might well turn on class questions of proof, making the outcome of a trial uncertain for all parties. Moreover, even after trial is concluded, there would likely be one or more lengthy appeals. Given this uncertainty, a "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

***The Reaction of Class Members.*** The second factor "attempts to gauge whether members of the class support the settlement." *Prudential II*, 148 F.3d. at 318. Typically, the reaction of the class is reviewed by looking at the percentage of objections and opt-outs received in relation to the class as a whole. *See, e.g.*, *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 251 (D.N.J. 2005) (one factor favoring approval of the settlement is that only 0.06% of the class members opted out); *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313-14 (3d Cir. 1993) ("Less than 30 of approximately 1.1 million shareholders objected. This small proportion of objectors does not favor derailing settlement"). Here, no Settlement Class Members have submitted objections or opt out requests.

The fact that there are no objections or opt outs to the Settlement "strongly militates a finding that the settlement is fair and reasonable." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 701 (M.D. Pa. 2008) (quoting *In re Linerboard Antitrust Litig.*, 321 F.

Supp. 2d 619, 629 (E.D. Pa. 2004)). No Settlement Class Members have requested to be excluded. This lack of objections and opt outs strongly weighs in favor of approving the Settlement. *See Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) ("A low number of objectors compared to the number of potential class members creates a strong presumption in favor of approving the settlement."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement"); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 342 (E.D. Pa. 2007) ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the settlements"); *Sullivan*, 667 F.3d at 323 (upholding district court's finding that twenty objections in a class of millions favored settlement).

*The Stage of Proceeding and Amount of Discovery Completed.* The third factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant*, 264 F.3d at 235(quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995) ("*GMC*")).

Although formal discovery had not yet commenced, Class Counsel engaged in significant informal discovery and was adequately informed to negotiate the Settlement. Krzeski Decl. ¶ 10. Class Counsel thoughtfully and carefully evaluated Class Members' claims before agreeing to the Settlement. Moreover, Class Counsel has significant experience in privacy cases, which informed their judgment regarding how to and when to settle such a case. *See* Krzeski Decl. ¶¶ 3, 8.

***The Risks of Establishing Liability, Proving Damages, and Maintaining the Class Action Through Trial.*** The fourth through sixth factors "examine what the potential rewards (or downside) of the litigation might have been had class counsel elected to litigate the claims rather than settle them." *GMC*, 55 F.3d at 814. The factors include: (4) the risks of establishing liability; (5) the risks of establishing damages; and (6) the risks of maintaining the class action through trial. *Girsh*, 521 F.2d at 157. As one court explained:

> In examining [the risks of establishing liability], the Court need not delve into the intricacies of the merits of each side's arguments, but rather may "give credence to the estimation of the probability of the success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action.

*Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1991)); *see also In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 124–25 (D.N.J. 2002) (noting that the "court should avoid conducting a mini-trial and must, to a certain extent, give credence to the estimation of the probability of success proffered by class counsel.") (internal citation omitted).

Class Counsel believe that claims asserted in the Complaint are meritorious, but subject to strong defenses and inherent risks. Krzeski Decl. ¶ 14. As noted above, privacy cases are an especially risky area of class litigation, with scant successful precedent supporting certification. Indeed, many privacy cases have failed just at the pleading stage.

The risk of maintaining the Settlement Classes through trial also favors approval of the Settlements. A motion to dismiss has yet to be survived, a litigation class had not yet been certified, and while Class Counsel are confident that such a class would have been certified, Defendant would have fought aggressively to the contrary. The Settlement removes any potential threats to class certification based on individual defenses and damages issues. Without class certification, each Settlement Class Member would be left to fend for himself or herself. In sum, the risks of

establishing liability, establishing damages, maintaining the class action through trial, and ultimately through appeals, strongly favor final approval.

      *The Ability of Defendant to Withstand a Greater Judgment.* The seventh factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant*, 264 F.3d at 240. "Even if solvency could be assured," the Third Circuit "regularly find[s] a settlement to be fair even though the defendant has the practical ability to pay greater amounts." *McDonough v. Toys "R" Us, Inc*., 80 F. Supp. 626, 645 (E.D. Pa. 2015) (citing cases). For example, in *Lazy Oil,* the district court concluded that the fact that a settling defendant had the financial resources to pay a larger judgment did not weigh against settlement "in light of the risks that Plaintiff would not be able to achieve any greater recovery at trial." *Lazy Oil v. Witco Corp.*, 95 F. Supp. 2d 290, 318 (W.D. Pa. 1997).

      Class Counsel believe that they obtained the maximum settlement value for the Settlement Class, given all risks of litigation. Indeed, the Settlement Fund is wholly uncapped in the aggregate, although individual claim caps do apply. Even if Plaintiff proceeded to trial and won, and then prevailed following appeals, a successful collection of the full judgment is not a certainty. The fact that Defendant might have the financial resources to pay a larger judgment does not necessarily weigh against approval of a settlement when considered along with the substantiality of the Settlement within the context of the litigation. In light of these facts, including the real possibility of recovering less or nothing at all, this factor weighs in favor of final approval.

      *The Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation.* Both the eighth and ninth *Girsh* factors evaluate the reasonableness of the Settlement. "While the court is obligated to ensure that the proposed settlement is in the best interest of the class members by reference to the best possible outcome, it

must also recognize that settlements typically represent a compromise and not hold counsel to an impossible standard." *In re Aetna Inc*., CIV. A. MDL 1219, 2001 WL 20928, at *6 (E.D. Pa. Jan. 4, 2001); *see also GMC*, 55 F.3d at 806 (noting that "after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution"); *Lazy Oil*, 95 F. Supp. 2d at 338-39 (stating that a court "should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and abandoning of highest hopes'"). For the reasons stated above, the Settlement fairly and reasonably recompenses Class Members for their out-of-pocket losses and lost time. The relief offered by the Settlement is fair also considering the risks of continued litigation. This is not only a complex case, but it is in an especially risky field of litigation. *See, e.g.*, *In re Countrywide Fin. Corp.*, 2010 WL 3341200, at *6 (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results"). Privacy cases continue to be among the most risky and uncertain of all class action litigation and certification is rare. Through the Settlement, Plaintiff and Class members gain significant benefits without having to face further risk.

The benefits provided by the Settlement are outstanding when compared to other privacy settlements, and this Settlement falls well within the range of a reasonable settlement. *See* Krzeski Decl. ¶¶ 20, 23. A comparison with the monetary recovery in other privacy settlements demonstrates the strength of this Settlement.

This conclusion is further supported by the absence of any objections or opt-outs. Given the risks of continued litigation, the Settlement falls within the range of reasonableness and this Court should finally approve it.

## V.      THE NOTICE PROGRAM MET DUE PROCESS REQUIREMENTS

Under Rule 23(e), the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. FED. R. CIV. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." FED. R. CIV. P.23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Notice that is mailed to each member of a settlement class "who can be identified through reasonable effort" constitutes reasonable and sufficient notice. *Id.* at 176. Moreover,  the settlement notice must be "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Notice need only satisfy the "broad 'reasonableness' standards imposed by due process." *Id.* (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975)). A notice reaching 70-95% of the class is often cited  as  meeting  the requirements  of  Rule  23(c)(2)(B)  and  due  process. *See Shy v. Navistar Int'l Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022) (citing Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf).

The Notice Program preliminarily approved by the Court and executed by the Settlement Administrator was very successful. The notice program provided Class Members with a clear and concise statement of their rights under Rule 23(c)(2)(B). The notices directed Class Members to the Settlement Website or a toll-free number for additional information regarding how they could opt out of or object to the Settlement. The manner of providing notice, which included individual

notice by mail and/or email to all Class Members who could be reasonably identified (including reminder emails to individuals for whom the Settlement Administrator had an email address), represented the best notice practicable under the circumstances. *See Frost v. Household Realty Corp.*, 61 F. Supp. 3d 740, 745 (S.D. Ohio 2004); *see also Weinberger v. Kendrick*, 698 F.2d 61, 71 (2d Cir. 1982) (notice sent to individuals' last known address and published in Wall Street Journal constituted adequate notice, even though some members did not receive direct notice).

The Settlement Administrator estimates that it successfully provided direct notice to roughly 97.8% of Class Members. Settlement Administrator Decl., ¶ 4. This is well within the 70-95% range that is required to satisfy due process. *See Shy*, 2022 WL 2125574, at *5 (citing Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide, at 3 (2010), www.fjc.gov/sites/default/files/2012/NotCheck.pdf). The claims rate obtained to date (13%) is also typical in consumer class actions and is indicative of a successful notice program. *See Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("[A] claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness."); *see also, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (finding that a 1.8% claims rate reflects a positive reaction by the class); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017) (approving data breach settlement with a claims rate of roughly 0.23%), *aff'd*, 892 F.3d 968 (8th Cir. 2018).

The Notice Program in this case satisfied the structures of Rule 23 and due process and should be approved by the Court.

## VI.    CONCLUSION

For the foregoing reasons, the Court should enter an order (i) finally certifying the Settlement Class; (ii) finally appointing Plaintiff as Settlement Class Representative of the

Settlement Class; (iii) finally appointing Philip J. Krzeski and Joseph M. Lyon as "Class Counsel" for the Settlement Class; (iv) finally approving the Settlement of this action; (v) finally appointing Simpluris, Inc. to serve as the Settlement Administrator; and (vi) finding that the Notice Program satisfied as Rule 23 and due process.

Date: March 26, 2024                    Respectfully submitted,

                                        */s/ Daniel C. Herr*
                                        Daniel C. Herr (No. 5497)
                                        **LAW OFFFICE OF DANIEL C. HERR, LLC**
                                        1225 North King Street, Suite 1000
                                        Wilmington, DE 19801
                                        Phone: (302) 483-7060
                                        Fax: (302) 483-7065
                                        *DHerr@dherrlaw.com*

                                        **CHESTNUT CAMBRONNE PA**
                                        Bryan L. Bleichner (admitted *pro hac vice*)
                                        Philip J. Krzeski (admitted *pro hac vice*)
                                        100 Washington Avenue South, Suite 1700
                                        Minneapolis, MN 55401
                                        Phone: (612) 339-7300
                                        Fax: (612) 336-2940
                                        *pkrzeski@chestnutcambronne.com*
                                        *bbleichner@chestnutcambronne.com*

                                        **THE LYON FIRM**
                                        Joseph M. Lyon (admitted *pro hac vice*)
                                        2754 Erie Ave.
                                        Cincinnati, OH 45208
                                        Phone: (513) 381-2333
                                        Fax: (513) 766-9011
                                        *jlyon@thelyonfirm.com*

                                        ***Counsel for Plaintiff and Putative Class***